UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **Tony Chachere's Creole Foods**<br>**Of Opelousas, Inc.**<br>　<br>　　　　　　**Plaintiff,**<br>　　　v.<br>　<br>**Big Easy Foods of Louisiana, L.L.C.**<br>　<br>　　　　　　**Defendant** | CIVIL ACTION NO:<br>　<br>　<br>JUDGE:<br>　<br>　<br>MAG. JUDGE: |

**VERIFIED COMPLAINT**

Plaintiff, Tony Chachere's Creole Foods of Opelousas, Inc., states for its complaint:

**The Parties**

1.   Plaintiff, Tony Chachere's Creole Foods of Opelousas, Inc. (hereinafter "Tony Chachere's"), is a Louisiana corporation, with an office located at 519 North Lombard Street, Opelousas, Parish of St. Landry, Louisiana  70571.

2.   On information and belief, Defendant Big Easy Foods of Louisiana, L.L.C., formerly known as French Market Foods, Inc., (hereinafter "Big Easy") is a Louisiana limited liability corporation, located and doing business at 3935 Ryan Street, Lake Charles, Parish of Calcasieu, Louisiana  70605.

3.   This action arises, in part, under the Trademark Act of 1946 (as amended), 15 U.S.C. § 1051, et seq.  This Court has jurisdiction over Count I and II of this action pursuant to 15 U.S.C. § 1125(a) and 28 U.S.C. § 1331 and § 1338, and supplemental jurisdiction over the claims alleged in Counts III, IV, V and VI pursuant to the inherent powers of the Court. Venue is

predicated on 28 U.S.C. § 1391(b) and (c).   By contract (Exhibit 4, Co-Branding Agreement, Paragraph 19a) the parties agreed to venue to St. Landry Parish, Louisiana.

4. Defendant transacts business and is found within the Western District of Louisiana and is within the jurisdiction of this Court for purposes of service of process. Many of the unlawful acts committed by the Defendant, as hereinafter alleged, have been or will be, in whole or in part, carried out and made effective within this District and in Louisiana. The interstate trade and commerce described hereinafter is carried out in part within this District.

### The Facts

#### NATURE OF TRADE AND COMMERCE

5. Plaintiff Tony Chachere's is a manufacturer, marketer and seller of packaged food products, in particular frozen and other prepackaged foods and meals including frozen shrimp and sausages.

6. Plaintiff, either directly or through licensees, offers its line of packaged food products in inherently distinctive packaging featuring unique, distinctive and memorable colors, fonts, design elements, photographs, laudatory phrases and in some cases recipes and cooking suggestions. Features of Tony Chachere's inherently distinctive Trade Dress ("Tony Chachere's Trade Dress") include, *inter alia*, specifically positioned and sized curly, bright, colorful banners that follow a certain left to right upward pattern, use of specific colors for these banners to indicate amount of package content, such as for frozen shrimp, where blue indicates the least amount, and yellow the most, or to indicate certain ingredients of the packaged product, such as the type of packaged sausage, bright colored splotches to indicate weight or other feature of product, memorable photographs of uniquely arranged food items, use of a single bright, solid color as the background for the packaging, the color green as a feature in a majority of the

packaging, display of the **TONY CHACHERE'S** trademark in bright red with a thin white and black shaded outline, specific fonts and typestyles for each product, placement of recipes on the back of the package, specific coloring and style of various words displayed on packaging, including "Wild Caught Gulf Shrimp" in blue shading and rounded typesetting on frozen shrimp products, and "Shrimp" in black and white shading and rounded typesetting for shrimp bulk sales, and "Chicken Sausage" in black on a yellow banner for chicken sausages, a "three part setup" on clear packages for shrimp bulk sales, including the word "Shrimp" on top, a banner describing the amount in the middle, and a black, rectangular, rounded box at the bottom describing the processing status of the content, and the **TONY CHACHERE'S** mark above this setup, and specific arrangement and proportions of all these design elements on the packaging. A collection of samples of the Tony Chachere's Trade Dress is attached and made a part hereof as Exhibit 1.

7. Tony Chachere's and its predecessors-in-interest began use of elements of the Tony Chachere's Trade Dress continuously in the United States and Louisiana since at least as early as 1976.

8. Plaintiff started its business with its famous **TONY CHACHERE'S** Creole seasoning, and has expanded its product line since to about fifty products, including frozen shrimp, prepared chicken, turkey, Tur-Duc-Hen, sausages, shrimp, and other entrees and frozen foods.

9. Over the years, Tony Chachere's has changed its trade dress, yet it has always kept all or most of the unique and memorable elements listed above as part of its trade dress.

10. Plaintiff Tony Chachere's is the owner of all right, title and interest to the Tony Chachere's Trade Dress.

11. Tony Chachere's packaged food products identified by its distinctive Trade Dress have traditionally been sold and are currently being sold in grocery stores throughout the South, particularly in Louisiana.

12. Tony Chachere's expends a great deal of time, energy and money promoting its packaged foods products offered and sold in connection with the Tony Chachere's Trade Dress, *inter alia*, through internet websites, television, billboards, radio, magazine advertisements, and other media, and has received a high amount of third party publicity over the years. Examples of Plaintiff's promotional efforts and third party publicity are attached as Exhibit 2.

13. In 2005, Plaintiff teamed up with Emeril Lagasse, one of America's most-watched TV chefs, for a campaign to promote U.S.-certified premium wild shrimp from the Gulf of Mexico.

14. During the 2009-2010 football season, Plaintiff's advertising included extensive pre-game, game-time, and post-game radio coverage on top-ranked stations across Alabama, Florida, Georgia, Louisiana, Mississippi, Tennessee, South Carolina, Texas, and Oklahoma.

15. In 2009, Plaintiff organized televised cooking segments with Executive Media Chef Kelly Williams in Biloxi, MS, Baton Rouge, LA, Shreveport, LA, St. Louis, MO, Kansas City, MO, Memphis, TN, Little Rock, AR, Beaumont, TX, Jackson, MS, Nashville, TN, Knoxville, TN, Monroe, LA, Tallahassee, FL, Panama City, FL, Tyler, TX, Fayetteville, AR, Chicago, IL, Jacksonville, FL, Rockford, IL, Houston, TX, Greenville, MS, and Orlando, FL. In 2010, similar cooking segments with different popular chefs were organized in Baton Rouge, New Orleans, LA, St. Louis, MO, Houston, TX, Little Rock, AR, Memphis, TN, Biloxi, MS, Jackson, MS, Atlanta, GA, Savannah, GA, Jacksonville, FL, Orlando, FL, Wichita, KS, Tulsa, OK, Knoxville, TN, Asheville, NC, Chicago, IL, Beaumont, TX, Tallahassee, FL, Shreveport,

LA, Monroe, LA, and Birmingham, AL. This year, Plaintiff has already covered about 30 cities in the South with its televised cooking segments.

16. During the month of November 2010, Plaintiff had about 500 primetime TV spots for a commercial featuring Plaintiff's products, on networks including ESPN, CNN, CNN Headline News, Fox News Network, Food Network, CMT, and Cartoon Network.

17. From August to December 2010, Plaintiff's food products were featured in a media campaign in approximately 44,000 primetime spots on ESPN, ESPN2, CNN, CNN Headline News, Fox News Network, MSNBC, Food Network, CMT, Nickelodeon, and Cartoon Network. A similar campaign was run in 2009, on networks including ESPN, ESPN2, CNN, Fox News Network, MSNBC, Food Network, Cox Sports, Weather Channel, NFL Channel, and Fox Sports South. This year, Plaintiff's food products are being featured in a media campaign from September 2011 through January 2012 in approximately 42,760 primetime spots on ESPN, ESPN2, Fox Sports, CNN, CNN Headline News, Fox News Network, MSNBC, CNBC, The Weather Channel, Food Network, CMT, Nickelodeon, Cartoon Network, and Disney Channel.

18. Another of Plaintiff's media campaigns has been continuously running since 2010 on Comcast, Cox and Charter Sports Media, including a nationally televised cook-off competition, 30-second spots, hosted in-game coverage, 10-second opening/closing billboards, live on-air mentions, special programming such as a Tony Chachere's one-hour special recapping the College World Series, and online cross-promotion. Comcast Sports Southeast alone has about 6.3 million subscribers with a reach of 10 million.

19. Since 2003, Plaintiff has expended in excess of $17,000,000.00 for promoting its food products in connection with its Trade Dress.

20. During a single radio campaign in 2009, Plaintiff expended about $250,000 on radio advertising its products in eight southern states, including Jackson, MS radio, Many/Natchitoches Radio group, Monroe radio, Shreveport radio, and Moreauville radio, and numerous other radio stations.

21. From 2003 to 2011, gross sales for **TONY CHACHERE'S** branded products sold in its distinctive Trade Dress totaled in excess of $230,000,000.00.

22. In particular, Plaintiff's Tur-Duc-Hens are highly popular. In 2008, Defendant, as Plaintiff's exclusive licensee at the time, sold between 65,000 and 70,000 Tur-Duc-Hens packaged in the Tony Chachere's Trade Dress. An image of Plaintiff's packaging for its Tur-Duc-Hen is attached as Exhibit 3.

23. As a result of Tony Chachere's long, extensive and continuous use of the Tony Chachere's Trade Dress in connection with its packaged food products, including frozen shrimp and sausages, and as a result of the public exposure given to it through extensive sales, advertising, promotion and publicity, the Tony Chachere's Trade Dress has acquired distinctiveness and developed secondary meaning and has become a strong, well and favorably known, and even a famous designation of origin for packaged food products, including frozen shrimp and sausages, and Tony Chachere's has developed valuable trademark and trade dress rights to the Tony Chachere's Trade Dress.

24. Defendant Big Easy manufactures, markets and sells food products, including frozen and prepackaged foods, such as sausages and frozen shrimp.

25. In March 2003, Tony Chachere's and Big Easy executed a co-branding Agreement ("Co-Branding Agreement") whereby Plaintiff licensed Defendant, then known as French Market Foods, to manufacture, advertise and sell products using Plaintiff's trademarks

including the Tony Chachere's Trade Dress, such as packaging style, colors, and specific designs on the packaging.  A copy of the Co-Branding Agreement is attached as Exhibit 4.

26. Section 2(f) of the Co-Branding Agreement provides that "Licensee may not manufacture, sell, distribute, nor advertise any products that compete with those which it manufactures, sells, distributes and advertises under this Agreement."

27. In section 5(d) of the Co-Branding Agreement, Defendant, i.e. the Licensee, agrees that "it recognizes that the Tony Chachere's Trademarks is a highly valuable asset of Licensor [Plaintiff] and will not disparage or infringe the Tony Chachere's Trademarks, Licensee shall not, directly or indirectly, do anything that may have an adverse effect on Licensee's ownership rights in the Tony Chachere's Trademarks or dilute or diminish the value, reputation or appurtenant goodwill thereof."

28. On April 11, 2011, Defendant wrote Plaintiff that it intended to begin offering products under a brand name it owned, that the scheduled change would take place around July 2011, and that at that time Defendant would transition from Tony Chachere's branded products to its own brand. A copy of the letter is attached hereto as Exhibit 5.

29. In response, Plaintiff sent a letter to Defendant noting that it regarded this letter as an immediate termination of the relationship according to section 12(c) of the Co-Branding Agreement, and informed Defendant of its three (3) month deadline according to Section 14(c) to phase out Defendant's promotion and sale of Tony Chachere's branded products. A copy of this letter is attached as Exhibit 6.

30. Section 14(c) includes, *inter alia*, a paragraph prohibiting any sale of products not manufactured before termination of the Co-Branding Agreement.

31.     After Plaintiff's letter to Defendant, correspondence between the parties and Counsel for the parties ensued as to breaches of the Co-Branding Agreement, and the parties' rights and duties following the termination of the Co-Branding Agreement.

32.     On June 2, 2011, Counsel for Defendant sent a letter to Counsel for Plaintiff requesting samples of and information regarding Plaintiff's trade dress to "avoid incorporating" any of Plaintiff's trade dress rights in Defendant's rebranded products. A copy of this letter is attached as Exhibit 7.

33.     On June 9, 2011, Counsel for Plaintiff responded and included samples of Plaintiff's packaging, photographs showing specific food arrangements including its distinctive packaging for "Wild Gulf Shrimp," and other promotional materials. A copy of this letter is attached as Exhibit 8.

34.     The letter further noted that the attached samples were not a complete representation of Plaintiff's intellectual property rights, and that Plaintiff wanted to be sure that Defendant created its own trade dress and logos.

35.     Counsel for Plaintiff spelled out some of the highly distinctive elements of the Tony Chachere's Trade Dress, such as the banner style on packaging, amount and placement of such banners, photographs of food items prepared in the distinctive Tony Chachere's style, and the manner of application and proportion of such photographs as to the rest of the packaging surface.

36.     On July 22, 2011, Counsel for Defendant sent another letter to Counsel for Plaintiff, noting that Defendant regarded August 1, 2011 as the date of termination of the Co-Branding Agreement. A copy of this letter is attached as Exhibit 9.

37. Upon information and belief, Defendant Big Easy sold packaged food products in connection with the Tony Chachere's Trade Dress at least until September 2011.

38. Upon information and belief, Big Easy began manufacturing and selling packaged foods and meals, including frozen shrimp and sausages, in connection with a packaging trade dress confusingly similar to Tony Chachere's Trade Dress ("Infringing Trade Dress") in connection with the mark **BIG EASY** sometime in July 2011, or earlier.  Copies of packaging for some of Defendant's products, also sold directly next to Plaintiff's products, are attached as Exhibit 10.

39. The Infringing Trade Dress packaging displays banners in a style, color, size and at locations that are almost identical to Plaintiff's banner designs on its packaging. The content, font, size and style of the wording on Plaintiff's and Defendant's packaging is identical in many respects. For example, the words "Wild Caught Gulf Shrimp" in Exhibit 10 is an exact copy of Plaintiff's packaging, even the shades of blue. The proportions, location and number of the design elements on Defendant's packaging are almost identical to Plaintiff's. Defendant's mark **BIG EASY** is displayed in bright red with a thin white and black shaded outline, which are the same  colors and same style that Tony Chachere's uses for its **TONY CHACHERE'S** trademark.

40. Defendant is advertising its infringing products, *inter alia*, on billboards, the internet, television, newspaper, a cooking trailer and in magazines. Copies of such advertisements are attached as Exhibit 11.

41. The wholesaler Costco's website located at www.costco.com advertises for "Big Easy Foods Creole Style Tur-Duc-Hen" which is linked to customer reviews dated between

November 2010 to January 2011, explicitly referencing **TONY CHACHERE'S** meat products. A copy the website at www.costco.com dated September 15, 2011, is attached as Exhibit 12.

42. The wholesaler Sam's Club also combined displays of Defendant's **BIG EASY** brand name and products with customer reviews for Plaintiff's **TONY CHACHERE'S** food products. A copy the website at www.samsclub.com dated September 20, 2011, showing the reviews is attached as Exhibit 13.

43. The website located at www.cajungrocer.com advertises Defendant's **BIG EASY** products with images of Plaintiff's products, in particular images of Plaintiff's sausage packages. A copy the website at www.cajungrocer.com dated September 20, 2011, is attached as Exhibit 14.

44. Mr. Steven Joubert, a member of Plaintiff's regional sales team, was contacted by several customers and store personnel in the course of his business who noted that they were confused over the appearance of **BIG EASY** brand products, that they had the impression or belief that Tony Chachere's was no longer in business or no longer selling prepared and frozen foods, and that **BIG EASY** brand products have replaced Plaintiff's products. See Joubert Declaration attached as Exhibit 15.

45. On information and belief, Defendant Big Easy's copying of the Tony Chachere's Trade Dress was and is deliberate and intentional.

**UNLAWFUL CONDUCT OF DEFENDANT**

46. Defendant's use of the Infringing Trade Dress constitutes trademark infringement and unfair competition and is likely to cause confusion, including reverse confusion, deception and mistake, in that it will lead consumers to believe, falsely, that the products of Defendant are licensed, sponsored, franchised, approved or in some way connected with Plaintiff Tony Chachere's.

47. The goods of Plaintiff Tony Chachere's and Defendant are offered to members of the general public, with Defendant acting in direct competition with Plaintiff.

48. Confusion as to the source of Plaintiff's and Defendant's food products is likely, in particular because Defendant is currently selling the same food products to the exact same customers as Defendant used to sell to as Tony Chachere's licensee. Considering that some of Tony Chachere's branded products have been manufactured and distributed by Big Easy for over eight years, customers are highly likely to assume that the infringing **BIG EASY** products with the same look and feel as products the Tony Chachere's Trade Dress must originate from Plaintiff, perhaps as a lower-cost "value brand."

49. Actual customer confusion has occurred.

50. Any defect, complaint, fault or adverse publicity in connection with Defendant's products offered under or in conjunction with the infringing trade dress will necessarily reflect adversely on Plaintiff Tony Chachere's and seriously injure the reputation which Plaintiff Tony Chachere's has established in the field of packaged food products.

51. Plaintiff Tony Chachere's has suffered and will continue to suffer irreparable harm in the form of damage to business reputation, goodwill, and distinctive quality of the Tony Chachere's Trade Dress, and has suffered and will suffer other damages including loss of sales and profits and business opportunity due to Defendant's actions.

52. Defendant has also breached its obligations under the Co-Branding Agreement in that Defendant failed to comply with Sections 2(f) and 5(d) for selling competing goods and infringing goods.

**COUNT I**

## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

53. Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 52, inclusive, above.

54. On information and belief, Defendant's use of the Infringing Trade Dress is likely to deceive, and has actually deceived, the public into believing, falsely, that Defendant's food products are those of, sponsored or approved by, or in some way associated with Plaintiff Tony Chachere's, or that Plaintiff Tony Chachere's products are those of, sponsored or approved by, or in some way associated with the Defendant, to the great injury of Plaintiff Tony Chachere's trade and goodwill and to the injury of the public. The aforesaid acts constitute federal unfair competition in the form of false representation, and false designation of origin in interstate commerce, all in violation of 15 U.S.C. § 1125(a).

55. Plaintiff Tony Chachere's has suffered and will continue to suffer irreparable harm in the form of damage to business reputation, goodwill, and distinctive quality of the Tony Chachere's Trade Dress, and has suffered and will suffer other damages including loss of sales and profits, and other monetary damages, and business opportunity due to Defendant's actions.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth in the prayer for relief.

## COUNT II
## FEDERAL ANTI-DILUTION

56. Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 55, inclusive, above.

57. On information and belief, Defendant's use of the infringing trade dress after Plaintiff's adoption of the Tony Chachere's Trade Dress is likely to dilute the distinctive qualities of the famous and distinctive Tony Chachere's Trade Dress, to the great injury of Plaintiff Tony

Chachere's trade, goodwill, distinctive quality of the Tony Chachere's Trade Dress and to the injury of the public. The aforesaid acts constitute dilution under 15 U.S.C. § 1125(c).

58. Tony Chachere's has suffered and will continue to suffer irreparable harm in the form of damage to business reputation, goodwill, and distinctive quality of the Tony Chachere's Trade Dress, and has suffered and will suffer other damages including loss of sales and profits, and other monetary damages, and business opportunity due to Defendant's actions.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth in the prayer for relief.

## COUNT III
## LOUSIANA TRADEMARK INFRINGEMENT
## AND UNFAIR COMPETITION

59. Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 58, inclusive, above.

60. The aforesaid acts of Defendant constitute trademark infringement and unfair competition under the law of the State of Louisiana and are likely to cause confusion, including reverse confusion, deception and mistake among members of the consuming public and the trade as to the source of products offered by Defendant, to the irreparable injury of Plaintiff Tony Chachere's, including injury to its sales and profits.

61. Tony Chachere's has suffered and will continue to suffer irreparable harm in the form of damage to business reputation, goodwill, and distinctive quality of the Tony Chachere's Trade Dress, and has suffered and will suffer other damages including loss of sales and profits, and other monetary damages, and business opportunity due to Defendant's actions.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth in the prayer for relief.

## COUNT IV
## LOUISIANA DILUTION AND INJURY TO BUSINESS REPUTATION

62. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 61 inclusive, above.

63. The aforesaid acts of Defendant constitute dilution and injury to business reputation under La. R.S. § 51:223.1, in that Defendant's use of the Infringing Trade Dress is likely to dilute the distinctive quality of the Tony Chachere's Trade Dress, and likely to injure Plaintiff's business reputation.

64. Plaintiff Tony Chachere's has suffered and will continue to suffer irreparable harm in the form of damage to business reputation, goodwill, and distinctive quality of the Tony Chachere's Trade Dress, and has suffered and will suffer other damages including loss of sales and profits, and other monetary damages, and business opportunity due to Defendant's actions.

WHEREFORE, Plaintiff prays for judgment against the Defendant as set forth in the prayer for relief.

## COUNT V
## LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

65. Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 64, inclusive, above.

66. Defendant used Plaintiff's name, brand and distribution network to gain access to Plaintiff's retail outlets and now uses, in competition against Plaintiff, access and information gained during the contract. Furthermore, based upon information and belief, Defendant appears to be spreading misinformation regarding Plaintiff's business operational status.

67. The aforesaid acts of Defendant constitute unfair business acts or deceptive acts or practices in the conduct of any trade or commerce under La. R.S. §§ 51:1401-1419.

68.     Plaintiff Tony Chachere's has suffered and will continue to suffer irreparable harm in the form of damage to business reputation, goodwill, and distinctive quality of the Tony Chachere's Trade Dress, and has suffered and will suffer other damages including loss of sales and profits, and other monetary damages, and business opportunity due to Defendant's actions.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth in the prayer for relief.

## COUNT VI
## BREACH OF CONTRACT

69.     Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 68, inclusive, above.

70.     The aforesaid acts of Defendant constitute breach of the Co-Branding Agreement.

71.     Defendant has been and is manufacturing, promoting, advertising and selling competing packaged food products and infringing products in violation of Sections 2(f) and 5(d) of the Co-Branding Agreement.

72.     Plaintiff Tony Chachere's has suffered and will continue to suffer irreparable harm in the form of damage to business reputation, goodwill, and distinctive quality of the Tony Chachere's Trade Dress, and has suffered and will suffer other damages including loss of sales and profits, and other monetary damages, and business opportunity due to Defendant's actions.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth in the prayer for relief.

## Prayer For Relief

WHEREFORE, Plaintiff demands judgment against Defendant and respectfully requests relief as follows:

(1)     That Defendant and its officers, directors, agents, owners, employees and attorneys and all persons acting under, by or in concert with them or any of them found to have committed acts of unfair competition against Plaintiff Tony Chachere's in relation to the Tony Chachere's Trade Dress be forthwith permanently enjoined and restrained from any of the following:

   (a)   using the Infringing Trade Dress or any trade dress confusingly similar to the Tony Chachere's Trade Dress as a designator of origin, trademark, service mark or trade name, or otherwise marketing, advertising, or identifying Defendant's products;

   (b)   making any statement or representation, or using any false designation of origin or false description or performing any act which is likely to lead the trade or public, or individual members thereof, to believe that the products offered by Defendant are in any manner associated or connected with, sponsored by or approved by Plaintiff Tony Chachere's, or that the products of Plaintiff are in any manner associated or connected with Defendant;

   (c)   otherwise infringing or diluting the Tony Chachere's Trade Dress;  and

   (d)   unfairly competing with Plaintiff Tony Chachere's in any manner.

(2)     That Defendant be directed to file with this Court and serve upon Plaintiff within thirty (30) days after service of the permanent injunction requested in Paragraph (1) above, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with, and will continue to comply with, the injunction.

(3)     That Defendant be required to deliver up for destruction all packaging, literature, promotional material, advertising, signage and other material bearing the Tony Chachere's Trade Dress or any other trade dress or designations so similar to the Tony Chachere's Trade Dress as to be likely to be confusing or deceptive to the consuming public or that will dilute the

distinctive quality of the Tony Chachere's Trade Dress, together with all means of making the same.

(4) That Plaintiff Tony Chachere's be awarded damages suffered as a result of the unlawful acts of Defendant, in an amount to be determined by the Court.

(5) That Plaintiff be awarded Defendant's profits after an accounting.

(6) That Plaintiff be awarded treble damages or profits, whichever is greater, plus reasonable attorneys' fees, due to the exceptional nature of this case pursuant to 15 U.S.C. § 1117(a) and/or pursuant to La. R.S. § 51:1401 *et seq.*

(7) That Plaintiff recover its costs in the suit.

(8) That Plaintiff have such other and further relief as the Court may deem appropriate.

A Jury Trial is hereby demanded.

Respectfully Submitted:

Leefe Gibbs Sullivan Dupré & Aldous

　　　/s/ Richard K. Leefe　　　
Richard K. Leefe, Bar No.7544, Trial Attorney
One Lakeway
Suite 1470
3900 North Causeway Blvd.
Metairie, La. 70002
(504) 830-3939
Fax: 830-3998
E-mail: rkleefe@lgsdalaw.com

Of Counsel:
Thomas W. Brooke, Esq.
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C.  20006
202-663-7271

-18-

Service Information:

Please Serve:
Big Easy Foods of Louisiana, L.L.C.
Through its Registered Agent: Mark T. Abraham
3935 Ryan Street
Lake Charles, Louisiana 70605

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Tony Chachere's Creole Foods<br>Of Opelousas, Inc.<br><br>    Plaintiff,<br>v.<br><br>Big Easy Foods of Louisiana, L.L.C.<br><br>    Defendant | CIVIL ACTION NO:<br><br>JUDGE:<br><br>MAG. JUDGE: |

## VERIFICATION

STATE OF LOUISIANA

PARISH OF ST. LANDRY

  Before me, Notary, came and appeared:

**DONALD A. CHACHERE, JR.**

a person of full age and majority, who, after begin duly sworn did depose and say that he is the President of Tony Chachere's Creole Foods of Opelousas, Inc., that he has read the foregoing Complaint, and the facts and statements as set out therein are true and correct to his knowledge and belief.

            *[signature]*
            DONALD A. CHACHERE, JR.

Sworn and Subscribed before me,
Notary, this 23rd day of September, 2011.

*[signature]*
NOTARY PUBLIC
ID# 38153